UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FABIAN VILLARREAL,

        Plaintiff,                       Civil Action No. 12-12041

        v.                              District Judge George Caram Steeh
                                                  Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12]**

Plaintiff Fabian Villarreal appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his application for supplemental security income benefits and child disability benefits. (*See* Dkt. 1, Compl. ¶ 2.) Before the Court for a report and recommendation are the parties' cross-motions for summary judgment (Dkt. 9, Pl.'s Mot. Summ. J.; Dkt. 12, Def.'s Mot. Summ. J.). For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's finding that Plaintiff is not disabled within the meaning of the Social Security Act. The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 9) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 12) be **GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **AFFIRMED**.

**I. BACKGROUND**

Plaintiff was born with right-sided brachial plexopathy, a birth defect that renders his right, non-dominant arm useless. (Tr. 281.) Although he has investigated surgery, his condition, at age 23,

remains unremedied. (Tr. 282.) Plaintiff experiences "mild shooting pain" in the right arm in conjunction with the plexopathy. (*Id.*) He now also suffers from type II diabetes and accompanying complications, primarily fatigue and weakness. (*See* Tr. 339-49; Tr. 40.)

Plaintiff graduated high school in 2007 and began working as a dishwasher in 2008. (Tr. 141-53, Work Activity Report.) He worked for five months at 12 hours per week, until management reduced his hours to three per week. (Tr. 220, 272.) Plaintiff then quit. (*Id.*) He has no other employment experience.

### A. Procedural History

In the fall of 2009, Plaintiff applied for both supplemental security income benefits and child's insurance benefits, alleging in each application disability beginning on his birth date, August 7, 1989. (Tr. 16, SSA Decision.) The Commissioner first denied Plaintiff's disability application in February 2010. (*Id.*) Plaintiff then requested an administrative hearing, and on January 14, 2011, he appeared with counsel before Administrative Law Judge ("ALJ") Kyle Andeer, who considered his case *de novo*. (*Id.*) At the hearing, Plaintiff amended the alleged disability onset date to December 23, 2009, which corresponds to the onset of his diabetes. (*Id.*) In a January 27, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (*See* Tr. 8.) The ALJ's decision became the final decision of the Commissioner on April 20, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-4.) This suit shortly followed. (Dkt. 1, Compl.) Both Plaintiff and Defendant now move for summary judgment.

**B. Medical Evidence**

Villarreal was born on August 7, 1989 with right brachial plexus palsy, a nerve condition that causes paralysis of the arm. (Tr. 301.) As a child, Plaintiff could only "very weakly move his fingers"; he could not abduct the arm or engage in "any real functional use of [it] at all." (*Id.*) Nevertheless, he did not then experience any pain associated with the palsy (*Id.*). And although physical therapy proved unavailing, Villareal "compensated well for his disability." (Tr. 296.) He was "an active child" and "play[ed] sports . . . basketball, baseball, and other activities." (*Id.*)

In October 1997, at age 8, Villarreal fell and fractured his right arm while skating. (Tr. 291.) He was placed in a splint for recovery. (*Id.*)

Approximately three years after the fracture, at age 12, Plaintiff began experiencing pain and numbness in his right arm and hand. (Tr. 285.) His doctor requested x-rays to investigate deformities and skeletal integrity. (Tr. 285.) Villarreal was also then diagnosed with obesity. (*Id.*)

In 2006, at age 16, Plaintiff considered surgery to improve his brachial plexus palsy. (Tr. 281-83.) However, surgeons were "not able to offer any surgeries . . . that could improve his functionality" and found "no reason to schedule a followup visit." (Tr. 282.) At that time, Plaintiff was "occasionally" complaining of "mild shooting pain in his right arm." (*Id.*)

In May 2009, Dr. Siva Sankaran evaluated Villarreal for Michigan's Disability Determination Service ("DDS"). Plaintiff complained of limited motion and poor development of his right arm, and Dr. Sankaran observed that Plaintiff could "[]not use his right arm" and had "significant supination deformity of the right wrist." (*Id.*) The fingers on that hand "d[id] not have any range of motion at all" and "hand grip [wa]s absent on [that] side." (*Id.*) Dr. Sankaran also noted occasional "numbness and pain in the right arm." (Tr. 271.) However, with his left arm Plaintiff was

"able to open a jar, button clothing, write legibly, pick up a coin and tie shoelaces." (*Id.*) There were "no other complaints," and, besides a history of gastroesophageal reflux, "no other significant medical, surgical, [or] psychiatric problems." (*Id.*)

In late 2009, after Plaintiff reported blurred vision, vomiting, and shaking, Dr. Enan Hanna, Plaintiff's primary care physician, diagnosed Villarreal with type II diabetes mellitus and prescribed Metformin. (*See* Tr. 340-41.) Plaintiff then began losing weight. He ultimately lost 90 pounds—from 230 pounds to 140 pounds—during the year following his diagnosis. (Tr. 39.) Given the relative recency of his diabetes onset, there is little more in the record documenting Plaintiff's diabetes. Notably, however, on November 8, 2010, Dr. Hanna observed that Plaintiff's diabetes was then "uncontrolled" and that he "ha[d]n't been taking [his] meds as prescribed." (Tr. 365.)

### C. Testimony at the Hearing Before the ALJ

#### *1. Plaintiff's Testimony*

Plaintiff testified before the ALJ in January 2011. He affirmed that he has "no functional use of [his] right arm." (Tr. 38.) Concerning his occasional right-arm pain, Plaintiff stated that his "nerves" "sometimes . . . get stiff" and "just freeze up," such that he must "try to relax and try to . . . breathe and stuff." (Tr. 43.) Eventually he calms down, but he "feel[s] the nerves just jumping." (*Id.*) This sensation is allegedly painful because "it just gets stiff for so long that eventually . . . it does ache." (*Id.*)

But Plaintiff's testimony revolved primarily around his diabetes. He testified that within six months of diagnosis, he lost almost 100 pounds, which represents nearly 50% of his original body weight. (Tr. 39.) According to Plaintiff, either the weight loss, the diabetes, or a combination of the two has deprived him of strength and energy, such that he is often shaky and fatigued. (Tr. 40.) The

4

fatigue associated with his diabetes is "an everyday thing," and he naps approximately "twice" per day for "[a]bout an hour" each time. (Tr. 44.) Plaintiff stated that he is "always tired," and that "[i]f they had [him] working long hours, [he would] eventually want to take a nap." (Tr. 46.) Moreover, he "wouldn't be able to stand the whole time they had [him] there." (*Id.*) Beyond fatigue, Plaintiff struggles to maintain his blood sugar level, which is "constantly up in . . . the 500s" and rarely below 200.[1] (Tr. 40.) He also experiences occasional numbness in his hand, apparently due to the diabetes. (Tr. 41.)

### 2. The Vocational Expert's Testimony

The ALJ solicited testimony from a vocational expert ("VE") to determine the availability of jobs for someone with functional limitations approximating those of Plaintiff. The ALJ asked about two hypothetical individuals of Plaintiff's age, education, and work experience, each limited to performing "light work."[2] The first hypothetical individual lacked all functional use of his right arm. (Tr. 40.) In response, the VE concluded that the individual would not be able to perform Plaintiff's past work as a dishwasher. Nevertheless, the VE concluded that such an individual could work within at least two broad categories of labor: "unskilled manufacturing" and "unskilled clerical." (Tr. 50.) The VE estimated that there existed 8,000 one-handed positions of the former category, including "inspect[ors], machine tenders, [and] bottle-line attendants," and 6,500 positions of the latter, including "mail clerks, office helpers, [and] sales attendants," all within the state of

---

[1] A random blood sugar of less than 140 (mg/dL) is normal. *See Type 2 Diabetes: Tests and Diagnosis*, MAYO CLINIC (Jan. 25, 2013), http://www.mayoclinic.com/health/type-2-diabetes/DS00585/DSECTION=tests-and-diagnosis.

[2] *See* 20 C.F.R. § 404.1567(b) (defining light work as, in part, requiring lifting up to 20 pounds, carrying of objects up to 10 pounds, and "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls").

5

Michigan. (*Id.*)

The second hypothetical individual was identical to the first, except that he required an hour-long nap during the eight-hour workday. (Tr. 51.) The VE concluded that such an individual "would not maintain the employment situation." (Tr. 51.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act, supplemental security income and child's disability benefits "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors

> (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Andeer found that Plaintiff had not engaged in substantial gainful activity since the amended alleged disability onset date of December 23, 2009. (Tr. 18.) At step two, the ALJ found that Plaintiff had the following severe impairment: a "right arm deformity since birth." (Tr. 18.) Third, the ALJ concluded that this impairment did not meet or medically equal a listed impairment. (Tr. 19.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant has no functional use of his right, non-dominant upper extremity." (*Id.*) At step four, the ALJ found that, at all times relevant to his decision, Plaintiff was unable to perform any past relevant work. (Tr. 21.) At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity. (Tr. 22.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of his January 2011 decision. (Tr. 23.)

## III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply

the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

The thrust of Plaintiff's appeal, though vague and undeveloped, is that substantial evidence does not support the ALJ's conclusion that Plaintiff is not disabled. In particular, Plaintiff asserts that (i) the ALJ's hypothetical did not accurately describe his disability, such that the VE's testimony in response to the hypothetical does not constitute substantial evidence; and that (ii) the ALJ gave improper weight to Dr. Sankaran's report for the Disability Determination Service. Neither of these claims is availing.

### A. Substantial Evidence Supports the ALJ's Formulation of the Hypothetical

Plaintiff first asserts that the ALJ's hypothetical fails to describe Plaintiff in every significant, relevant respect. (Pl.'s Mot. Summ. J. 10); *see Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (holding that a VE's testimony in response to the ALJ's hypothetical only constitutes substantial evidence if that hypothetical "accurately describes the plaintiff in all significant, relevant respects" (citing *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987))). However, Plaintiff's claim fails to identify precisely *how* the hypothetical fails. A general reiteration of the Plaintiff's maladies, with particular emphasis on Plaintiff's brachial plexopathy (*see id.*)—which the ALJ explicitly incorporated into his hypothetical (s*ee* Tr. 49)—simply does not suffice, leaving it almost entirely to the Court to discern Plaintiff's grounds for appeal.

Nevertheless, as the record attributes only two distinct disorders to Plaintiff, i.e., right brachial plexopathy and diabetes, there are only two possible grounds for Plaintiff's questioning the hypothetical: that the hypothetical did not adequately describe either Plaintiff's brachial plexopathy or diabetes.

With respect to his brachial plexopathy, Plaintiff asserts (i) that the hypothetical fails to

9

reflect his occasional right-arm pain (*see, e.g.*, Tr. 7), and (ii) that the VE was simply incorrect in his conclusion that a one-handed individual can work in unskilled manufacturing and unskilled clerical jobs. The latter assertion fails because Plaintiff, represented by counsel, refused the opportunity to cross-examine the VE during the hearing. (*See* Tr. 51.) And "when no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("[r]aising a discrepancy only after the hearing . . . is too late"); *see also Lake v. Comm'r of Soc. Sec.*, No. 10–10957, 2011 WL 282426, at *6 (E.D. Mich. Jan. 3, 2011) ("Because no challenge was made to the VE testimony at the hearing, the ALJ was entitled to rely on it.").

The former claim fails because the ALJ was not required to include Plaintiff's alleged pain in his hypothetical if Plaintiff's allegations were not credible. It is the role of the ALJ to assess credibility and determine the facts, and "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of [this duty]." *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). The ALJ, in deciding what testimony is credible and which impairments have limiting effects, necessarily also determines the appropriate content of the hypothetical. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir.2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability" and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate"). Here, the absence of any objective evidence that Plaintiff experiences disabling pain strongly suggests that Plaintiff's pain was not actually disabling. Indeed, Plaintiff merely testified he "occasionally" experiences "mild" pain in his right arm, and no medical opinion

in the record questions Plaintiff's ability to work. The consistent evidence that Plaintiff's pain is tolerable, including Plaintiff's own testimony that his arm "just gets stiff for so long that eventually . . . it does ache" (Tr. 43), constitutes substantial evidence that Plaintiff's pain is consistent with the ALJ's residual functional capacity assessment. The exertional demands of "light work," as opposed to work at higher exertional levels, arguably accounted for Plaintiff's pain. Thus, the Court finds no error in the way in which the ALJ dealt with Plaintiff's pain in his hypothetical to the vocational expert.

Second, Plaintiff questions the sufficiency of the hypothetical with respect to his diabetes. Fatigue is symptomatic of diabetes. *See, e.g.*, *Diabetes*, MAYO CLINIC (Jan. 31, 2013), http://www.mayoclinic.com/health/diabetes/DS01121/DSECTION=symptoms. Nonetheless, despite Villarreal's claims of "shakiness, fatigue, and left hand numbness," the ALJ correctly observed that there was "no objective evidence that show[ed] that his diabetes impose[d] more than minimal work related limitations." (Tr. 18.) Indeed, given the relative recency of his diagnosis, Plaintiff's testimony is the only evidence of his diabetes more than minimally affecting his ability to work.

Moreover, doctors have attempted to treat Plaintiff with Metformin, but Plaintiff "hasn't been taking [his] meds as prescribed." (Tr. 365.) The ALJ was therefore entitled to draw the adverse inference that, given Plaintiff's failure to adhere to the medication regiment prescribed by treating physicians, his symptoms were not as severe as alleged. (Tr. 19); *see, e.g.*, *Nagle v. Comm'r of Soc. Sec.*, No. 98-3824, slip op., at *2 (6th Cir. 1999) ("[plaintiff's] testimony regarding his daily activities and his use of pain medication belies his claims of disabling pain"); *Bailey v. Comm'r of Soc. Sec.*, 623 F. Supp. 2d 889, 899 (W.D. Mich. 2009) (holding that "[t]he ALJ was legally entitled to draw the adverse inference that [plaintiff's] . . . resultant limitations were not as severe or

11

disabling as she alleged").

In short, the lack of any objective evidence substantiating Plaintiff's claims, together with Plaintiff's failure to follow the doctor's orders, constitutes substantial evidence that Plaintiff's fatigue is not disabling. The ALJ therefore reasonably excluded Plaintiff's fatigue from the hypothetical.

### B. The ALJ Did Not Improperly Rely on the Opinion of the Medical Examiner

In his second claim of error, Plaintiff maintains that the ALJ improperly relied on the opinion of the medical examiner, Dr. Sankaran. Plaintiff posits that because the conclusions of Dr. Sankaran and the ALJ are essentially the same, the ALJ must have relied entirely on the opinion of Dr. Sankaran. But this argument neglects that the opinions of Plaintiff's treating physicians are also essentially the same. In fact, Plaintiff's treating doctor made an observation almost identical to that of Dr. Sankaran: "[h]e currently has no pain, although he does occasionally complain of mild shooting pain in his right arm." (Tr. 282.) Such observations are reiterated throughout the record. Ultimately, the ALJ found Dr. Sankaran's opinion persuasive, and consequently gave it significant weight, "because it is consistent with the record and supported by his well-documented examination of the claimant." (Tr. 21.) This Court finds no error.

### V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff is not disabled. The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 9) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 12) be **GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **AFFIRMED**.

**VI. FILING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
                                                    UNITED STATES MAGISTRATE JUDGE

Dated: July 1, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 1, 2013.

                                                    s/Jane Johnson
                                                    Deputy Clerk